**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
         jsmith@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFFI SOFOIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL NUTRITION CORPORATION and FULLSTORY, INC.,<br><br>Defendants. | Case No. 2:20-cv-10586<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Raffi Sofoian ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendants General Nutrition Corporation ("GNC") and FullStory, Inc. ("FullStory") (collectively, "Defendants") for wiretapping the electronic communications of visitors to Defendant GNC's website, GNC.com (the "Website"). The wiretaps, which are embedded in the computer code on the Website, are used by Defendants to secretly observe and record website visitors' keystrokes, mouse clicks,[1] and other electronic communications, including the entry of Personally Identifiable Information ("PII"), in real time. By doing so, Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635, and invaded Plaintiff's and Class Members' privacy rights in violation of the California Constitution.

2. In July 2020 and August 2020, Mr. Sofoian visited the Website. During the visit, Defendants recorded Plaintiff's electronic communications in real time, including Plaintiff's mouse clicks and keystrokes.

3. Plaintiff brings this action on behalf of himself and a class of all persons whose electronic communications were intercepted through the use of Defendants' wiretaps on the Website.

## THE PARTIES

4. Plaintiff Raffi Sofoian is a resident of West Hills, California and has an intent to remain there, and is therefore a domiciliary of California. In July 2020 and August 2020, prior to the filing of this lawsuit, Mr. Sofoian visited the Website and

---

[1] As used herein, the term "mouse clicks" also refers to "touch gestures" such as the "tap," "swipe," and similar gestures used on touchscreen devices.

browsed the nutritional products available on the Website, but did not purchase anything. Mr. Sofoian was in West Hills when he visited the website. During the visit, Mr. Sofoian's keystrokes, mouse clicks, and other electronic communications were intercepted in real time and were disclosed to Defendants GNC and FullStory through the wiretap. Mr. Sofoian was unaware at the time that his keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real-time and would be disclosed to FullStory, nor did Mr. Sofoian consent to the same.

5. Defendant General Nutrition Corporation is a company incorporated under the laws of Pennsylvania with its principal place of business 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

6. GNC does business throughout California and the entire United States.

7. GNC owns and operates the Website.

8. Defendant FullStory is a Delaware corporation with its principal place of business at 1745 Peachtree Street Northwest, Suite G, Atlanta, Georgia 30309.

9. FullStory is a marketing software-as-a-service ("SaaS") company.

10. FullStory provides a feature called "Session Replay," which is at issue here and described more fully below. At all relevant times here, GNC has used FullStory's "Session Replay" product on the Website.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

12. This Court has personal jurisdiction over Defendants because each of the Defendants have purposefully availed themselves of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of each of the Defendants'

forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

13. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## STATEMENT OF FACTS

### I. Overview Of The Wiretaps

14. Defendant FullStory develops a software of the same name that provides marketing analytics.

15. One of FullStory's features is called "Session Replay," which purports to help businesses improve their website design and customer experience.

16. Session Replay provides a real-time recording of a user's interactions on a website. FullStory says that "Session replay tools capture things like mouse movements, clicks, typing, scrolling, swiping, tapping, etc."

17. FullStory touts that Session Replay relies on real video of a user's interactions with a website, or, in another words, a "recorded session."[2]

18. To demonstrate how Session Replay works, FullStory displays the "recorded session of a fictional user interacting with th[e] [Session Replay] Guide":

//
//
//
//
//
//
//
//
//

---

[2] https://www.fullstory.com/resources/the-definitive-guide-to-session-replay/.

[Screenshot of FullStory webpage showing "The Definitive Guide to Session Replay" with table of contents including: What is Session Replay?, How Session Replay Works (What Happens in the DOM, Events, Assets, Session Recording Capabilities, What You Can't (Yet) Record), Session Replay and Privacy, What is Session Replay Useful For? (15 Problems Solved by Session Replay, Qualitative and Quantitative, Better Together, Session Replay for Different Jobs), Finding the Right Session Replay Tool (The Top Session Replay Tools, Session Replay Tool Evaluation Criteria, FullStory Session Replay), Seeing is Believing.]

19. FullStory describes the above video as follows:

> Here you can watch a FullStory session replay of a user—Daniel Falko—flipping through *The Definitive Guide to Session Replay*. **Notice how you can see interactions, mouse movements, clicks, interactions with overlays, and more**—and everything is listed in order in a stream at the right side of the replay. This is what a session replay looks like in the FullStory app.[3]

20. FullStory's promotional video shows the behind-the-scenes features of the software. First, FullStory lets you view a list of users who visited the website, as well as the time they spent on the website:

//
//
//
//

---

[3] https://www.FullStory.com/resources/the-definitive-guide-to-session-replay/#finding-the-right-session-replay-tool (emphasis added).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED — 4



21. Upon clicking one of these "sessions," FullStory lets a company view the video of a user's interaction with a website, including mouse movements, clicks, interactions with overlays, keystrokes, geographic location, IP address, and more "to see the real customer experience behind the data":

22. FullStory instructs prospective partners that "[t]he first step toward recording all in-browser interactions and making them available for pixel-perfect playback is deploying FullStory's recording JavaScript snippet. Simply paste the snippet into the <head> element via your Content Management System (CMS), via your online store platform, or via your application's code."

23. This snippet of code allows Defendants to record the keystrokes, mouse clicks, data entry, and other electronic communications of visitors to websites where the code is installed. It also allows Defendants to track the amount of time spent on the website, geographic location of the visitor, and other information described above.

24. FullStory records website user's interactions locally in the user's browser and transmits that information to FullStory's recording servers. FullStory then makes the information available to its clients.

25. FullStory not only records users' electronic communications, but also can monitor them *live*. "For sessions that are actively recording and we are still receiving events from a user (meaning the last page in their session is still open), you'll see a 'Go Live' button at the end of the playback bar. Once you click on the button, you'll essentially be riding along in near real time with the user with no need to refresh the playback."

26. FullStory's recording is not limited to desktop website, but also mobile websites and mobile applications.[4]

27. Technology like FullStory's Session Replay feature is not only highly intrusive, but dangerous. A 2017 study by Princeton University found that session recording technologies were collecting sensitive user information such as passwords and credit card numbers. The research notes that this wasn't simply the result of a

---

[4] https://www.fullstory.com/mobile-apps/.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED 6

bug, but rather insecure practices. Thus, session recording technologies such as FullStory's can leave users vulnerable to data leaks and the harm resulting therefrom.

28. FullStory's business model involves entering into voluntary partnerships with various companies and providing their software to their partners.

29. One of FullStory's partners is Defendant GNC.

30. GNC utilized FullStory's software on the Website.

31. GNC knew that FullStory's software captures the keystrokes, mouse clicks and other communications of visitors to its website, and pays FullStory to supply that information.

32. Pursuant to an agreement with FullStory, GNC enabled FullStory's software by voluntarily embedding FullStory's software code on the Website.

33. As previously deployed, FullStory's software, as employed by GNC, functions as a wiretap.

## II. Defendants Wiretapped Plaintiff's Electronic Communications

34. In July 2020 and August 2020, Mr. Sofoian visited the Website and perused the Website's selection of nutritional products. Mr. Sofoian did not purchase anything.

35. During that visit, and upon information and belief, the Session Replay feature in FullStory's software created a video capturing each of Plaintiff's keystrokes and mouse clicks on the website. The FullStory wiretap also captured the date and time of the visit, the duration of the visit, Plaintiff's IP address, his location at the time of the visit, his browser type, and the operating system on his device.

36. FullStory's recording of keystrokes, mouse clicks, data entry, and other electronic communications began the moment a user accesses or interacts with the Website.

37. When users access the Website and make a purchase, they enter their PII. FullStory's software captures these electronic communications throughout each step of the process.

38. FullStory's software captures, among other things:
   (a) The user's mouse clicks;
   (b) The user's keystrokes;
   (c) The user's payment card information, including card number, expiration date, and CVV code;
   (d) The user's IP address;
   (e) The user's their location at the time of the visit; and
   (f) The user's browser type and the operating system on their devices

39. Crucially, Defendant GNC did not ask users, including Plaintiff, whether they consent to being wiretapped by FullStory. Users were never actively told that their electronic communications are being wiretapped by FullStory. Nor was any such wiretapping disclosed in GNC's Privacy Policy.

40. Neither Plaintiff nor any Class member consented to being wiretapped on the Website, nor to have their communications recorded and shared with FullStory. Any purported consent that was obtained was ineffective because (i) the wiretapping began from the moment Plaintiff and Class members accessed the Website; (ii) the Privacy Policy did not disclose the wiretapping or FullStory; and (iii) the hyperlink to the Privacy Policy is inconspicuous and therefore insufficient to provide notice.

## CLASS ACTION ALLEGATIONS

41. Plaintiff seeks to represent a class of all California residents who visited the Website, and whose electronic communications were intercepted or recorded by FullStory. Plaintiff reserves the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

42. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The precise number of Class members and their identities are

unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

43. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether Defendants have violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635 and invaded Plaintiff's privacy rights in violation of the California Constitution; and whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

44. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, visited the Website and had his electronic communications intercepted and disclosed to FullStory through the use of FullStory's wiretaps.

45. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

46. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of

scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

47. Plaintiff brings all claims in this action individually and on behalf of members of the Class against Defendants.

## COUNT I
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631

48. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

49. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

50. To establish liability under section 631(a), Plaintiff need only establish that Defendants, "by means of any machine, instrument, contrivance, or in any other manner," did any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

51. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

52. FullStory's software, including its Session Replay feature, is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

53. At all relevant times, by using FullStory's technology, Defendants intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and Class Members on the one hand, and GNC's Website on the other hand.

54. At all relevant times, by using FullStory's technology, Defendants willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative Class Members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

55. Defendants aided, agreed with, and conspired with each other to implement FullStory's technology and to accomplish the wrongful conduct at issue

here. In addition, GNC employed FullStory to accomplish the wrongful conduct at issue here.

56. Plaintiff and Class Members did not consent to any of Defendants' actions in implementing FullStory's wiretaps on the Website. Nor have Plaintiff nor Class Members consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiff and Class Members' electronic communications.

57. The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

58. Unless enjoined, Defendants will continue to commit the illegal acts alleged here. Plaintiff continue to be at risk because he frequently uses the internet for shopping, and he continues to desire to use the internet for that purpose. Defendant FullStory provides its software, including the Session Replay feature, to many other website operators who offer a wide array of services. For many websites that Plaintiff may or is likely to visit in the future, he has no practical way to know if his website communications will be monitored or recorded by FullStory.

59. Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT II
**Violation Of The California Invasion Of Privacy Act,
Cal. Penal Code § 635**

60. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

61. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

62. California Penal Code § 635 provides, in pertinent part:

> Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6 , shall be punished by a fine not exceeding two thousand five hundred dollars.

63. At all relevant times, by implementing FullStory's wiretaps, each Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

64. FullStory's code is a "device" that is "primarily or exclusively designed" for eavesdropping. That is, the FullStory's code is designed to gather PII, including keystrokes, mouse clicks, and other electronic communications.

65. Plaintiff and Class Members did not consent to any of Defendants' actions in implementing FullStory's wiretaps.

66. Unless enjoined, Defendants will continue to commit the illegal acts alleged here. Plaintiff continue to be at risk because he frequently uses the internet for shopping, and he continues to desire to use the internet for that purpose. Defendant FullStory provides its software, including the Session Replay feature, to many other website operators who offer a wide array of services. For many websites that Plaintiff may or is likely to visit in the future, he has no practical way to know if his website communications will be monitored or recorded by FullStory.

67. Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT III
### Invasion Of Privacy Under California's Constitution

68. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

69. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

70. Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

71. At all relevant times, by implementing FullStory's wiretaps on GNC's Website, each Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution, and procured the other Defendant to do so.

72. Plaintiff and Class Members had a reasonable expectation that their PII and other data would remain confidential and that Defendants would not install wiretaps on the Website.

73. Plaintiff and Class Members did not consent to any of Defendants' actions in implementing FullStory's wiretaps on the Website.

74. This invasion of privacy is serious in nature, scope and impact.

75. This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

76. Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a) For an order certifying the Class under Rule 23 and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that the Defendants' conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated: November 19, 2020  Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Joel D. Smith*
    Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
       jsmith@bursor.com

*Attorneys for Plaintiff*